UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL CARTER,<br>         Plaintiff,<br><br>                v.<br><br>UNIVERSITY OF CONNECTICUT,<br>         Defendant. | CIVIL ACTION NO.<br>3:04cv1625 (SRU) |

**RULING ON MOTION TO DISMISS**

Michael Carter has sued the University of Connecticut for racially discriminatory treatment in violation of Title VI of the Civil Rights Act of 1964.  42 U.S.C. § 2000d.[1]  Carter filed his original complaint on September 28, 2004, an amended complaint on November 4, 2004, and a second amended complaint on August 22, 2005.[2]  The University of Connecticut has moved to dismiss the second amended action for failure to state a claim upon which relief can be granted.  For the reasons set forth below, the motion to dismiss is GRANTED.

**I.     Standard for Motion to Dismiss**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. Spalding*,

---

[1] Section 2000d of Title 42 of the United States Code states:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

[2] I granted a motion to dismiss the first amended complaint on June 30, 2005.  I granted Carter leave to file a second amended complaint, to allege facts demonstrating that the statute of limitations should be equitably tolled.

467 U.S. 69, 73 (1984).  The motion must therefore be decided solely on the facts alleged.  *See Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985).  When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and must construe any well pleaded factual allegations in the plaintiff's favor.  *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991).  In addition, the Court must draw inferences in the light most favorable to the plaintiff.  *See Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974).   The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims."  *United States v. Yale New Haven Hosp.*, 727 F. Supp. 784, 786 (D. Conn. 1990) (citing *Scheuer*, 416 U.S. at 236).

**II.     Factual Allegations**

The following facts, alleged in the Second Amended Complaint, are assumed true for purposes of ruling on the motion to dismiss.  Michael Carter, an African-American, entered the Ph.D program in psychology at the University of Connecticut in the fall of 1991.  In October 2000, he was terminated from the program, ostensibly because of the length of time he took to complete his dissertation.  Carter alleges that the University of Connecticut terminated him as a result of his race, and that other students in the program, including a white student, were permitted longer periods of time to finish their dissertations.

Carter hired an attorney to file a lawsuit against the University of Connecticut on November 9, 2001.  Over the next two years, he sporadically received communications from his attorney regarding the status of the lawsuit, and his attorney repeatedly assured him that the lawsuit had been filed.  In early 2004, Carter attempted to contact his attorney and receive a copy of the complaint, to no avail.  In June 2004, Carter filed a grievance against his attorney, and was

informed by the Chief Disciplinary Counsel's Office that the lawsuit had never been filed. This action was filed on September 28, 2004.

## III. Discussion

In federal civil rights suits, federal courts must borrow state statutes of limitations, because Congress did not establish a federal statute of limitations. *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989). In Title VI discrimination actions, federal courts routinely apply a state's personal injury statute of limitations. *See Morse v. University of Vermont,* 973 F.2d 122, 126 (2d Cir. 1992). Personal injury claims in Connecticut are governed by section 52-577 of the Connecticut General Statutes, which states that claims must be filed "within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577.

In this case, the parties agree that Connecticut's three-year statute of limitations applies. They also agree that the alleged discriminatory act occurred around October 2000, so that this claim should have been filed by October 2003. Even though Carter contacted his attorney and paid him a retainer within the three-year period, Carter's attorney did not file the lawsuit within the period. Carter eventually hired another attorney, who filed the action on September 28, 2004, approximately one year after the limitations period.

The University of Connecticut argues that Carter's complaint is barred by the statute of limitations. Carter proposes two tolling theories to save his claim: (1) the statute of limitations should be tolled due to extraordinary circumstances, including misrepresentation and fraud on the part of his attorney, and in light of Carter's reasonable diligence in pursuing his Title VI claim; and (2) the attorney had a fiduciary duty to Carter and the statute of limitations should be tolled until after the course of the attorney's conduct was completed.

Carter principally argues that equitable tolling renders his lawsuit timely. Equitable tolling is a form of discretionary relief that can be awarded upon consideration of all the facts and circumstances. To equitably toll a limitations period, a party "must show that extraordinary circumstances prevented him from filing his [complaint] on time, and he must have acted with reasonable diligence throughout the period he seeks to toll." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001), *cert. denied*, 536 U.S. 925 (2002). Carter points to the fraudulent conduct of his lawyer and his own reasonable diligence in support of his claim for equitable tolling. The Second Circuit has held that "an attorney's conduct, if it is sufficiently egregious, may constitute the sort of 'extraordinary circumstances' that would justify the application of equitable tolling . . . ." *Baldayaque v. United States*, 338 F.3d 145, 152-53 (2d Cir. 2003).

The difficulty for Carter is that, in federal civil rights actions that borrow state statutes of limitations, state rules on tolling, revival, and application apply. *Hardin*, 490 U.S. at 539. Federal courts, in borrowing state limitations periods, rely on the wisdom of the states in setting exceptions to the limitations period. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464 (1975). Therefore, courts "should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue." *Hardin*, 490 U.S. at 539. There is nothing about a civil rights action that would "justify special reluctance in applying state law." *Johnson,* 421 U.S. at 464.

Section 52-577 of the Connecticut General Statutes, the borrowed statute of limitations applicable in this case, has apparently never been held by an appellate court of Connecticut to be subject to the doctrine of equitable tolling. Instead, section 52-577 has been labeled a statute of

repose,[3] which "sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues." *Zapata v. Burns*, 207 Conn. 496, 508 (1988); *Sanborn v. Greenwald*, 39 Conn. App. 289, 302 (1995). "'When conducting an analysis under § 52-577, the only facts material to the trial court's decision on a [dispositive motion] are the date of the wrongful conduct alleged in the complaint and the date the action was filed.'" *LaBow v. Rubin*, 95 Conn. App. 454, 470 (2006) (quoting *Farnsworth v. O'Doherty*, 85 Conn. App. 145, 149-50 (2004)).

      Under circumstances that might have otherwise called for the invocation of equitable tolling, the Connecticut Appellate Court has held that it was "without authority" to extend a statute of limitations. *Beebe v. Town of East Haddam*, 48 Conn. App. 60, 68 (1998). *See also Kirwan v. Connecticut*, 168 Conn. 498, 500-02 (1975) (rejecting claim that plaintiff's insanity and false imprisonment tolled statute of limitations). In *Beebe*, the plaintiff was injured in a fall on a public sidewalk. Just over a month later, plaintiff's attorney gave written notice of defects in the sidewalk to the town clerk of the defendant town. Well over a year later, the plaintiff was hospitalized with an illness that rendered him incapable of conducting his affairs for forty-seven days. The action against the town was not commenced within the two-year statute of limitations, but plaintiff sought a ruling that the statute should be tolled during the period of his incapacitation. The Appellate Court noted that it could "find no reason, in fact or law, for the statute of limitations to have been tolled," *id.* at 66-67, and affirmed the entry of summary

---

[3] Some courts have held that the doctrine of equitable tolling does not apply to statutes of repose, as opposed to statutes of limitation. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990); *Connecticut Insurance Guaranty Assoc. v. Yocum*, 1996 WL 367726, 5 (Conn. Super. 1996) ("the doctrine of equitable tolling cannot be invoked to avoid the applicability of the time bar here at issue, which is a statute of repose, not a statute of limitations").

judgment for the defendant.  The reasoning of the *Beebe* and *LaBow* decisions precludes the application of equitable tolling in the present case.

Carter also argues that his claims were timely filed as a result of the operation of the continuing course of conduct doctrine.  That doctrine has been applied in cases subject to Conn. Gen. Stat. § 52-577, but it operates not by interrupting the running of the statute of limitations but by postponing the date on which the statute begins to run.  *Sanborn v. Greenwald*, 39 Conn. App. 289, 295 (1995) ("'When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed.'") (quoting *Handler v. Remington Arms Co.*, 144 Conn. 316, 321 (1957)).  *See also Giulietti v. Giulietti,* 65 Conn. App. 813, 835 (2001).  To invoke the doctrine, there must be evidence of the breach of a duty that remained in existence after the commission of the original wrong and that duty must not have terminated prior to the commencement of the period allowed for bringing an action for such wrong.  *Giulietti,* 65 Conn. App. at 834.  The doctrine "reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied."  *Golden v. Johnson Memorial Hospital, Inc.,* 66 Conn. App. 518, 525 (2001).

The continuing course of conduct doctrine has no applicability to this case.  Carter's termination from the degree program at the University of Connecticut was a discrete wrong and Carter has not alleged any continuing duty owed him by the defendant.  Perhaps Carter's attorney owed him a continuing duty, but the attorney was not named as a defendant and his duty is not transferrable to the University of Connecticut, the only named defendant in this case.

Finally, although not raised by Carter, several Connecticut statutes soften the harshness of

the statute of limitations in appropriate cases. Those statutes include Conn. Gen. Stat. §§ 52-593a and 52-595. Carter does not allege facts to bring his case within those statutes. Accordingly, there does not appear to be any basis for avoiding the operation of the statute of limitations in this case.

**IV.     Conclusion**

Because the applicable statute of limitations has expired, and because there is no basis for tolling the statute of limitations, the University of Connecticut's motion to dismiss (**doc. #31**) is **GRANTED**.  **The clerk shall close this file**.

It is so ordered.

Dated at Bridgeport, Connecticut, this 28th day of July 2006.

       /s/ Stefan R. Underhill
       Stefan R. Underhill
       United States District Judge